NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 07-11757 |
| | : | Lead Case (Jointly Administered) |
| Solomon Dwek, et al., | : | |
| | : | Chapter 11 |
| Debtor | : | |
| | : | |
| Charles A. Stanziale, Jr., Chapter 11 Trustee | : | |
| for the Estate of Solomon Dwek, et al., | : | Adversary No. 08-1201 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | **MEMORANDUM OPINION** |
| | : | |
| Kenneth Cayre, KLCC Investments, LLC, and | : | **Plaintiff's Motion to Approve** |
| KLC Foundation | : | **Settlement (Document #202)** |
| | : | |
| | : | **Defendants'(Cayre Entities)** |
| | : | **Motion for Partial Summary** |
| Defendants | : | **Judgment (Document #203)** |
| | : | |

**APPEARANCES**

Attorneys for Plaintiff, Charles A. Stanziale, Jr.,
Diane E. Vuocolo, Esquire
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

Attorney for Defendants, Kenneth Cayre, KLCC Investments, LLC, and KLC Foundation
Arthur Steinberg, Esquire
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Darren C. Barreiro, Esquire
Greenbaum, Rowe, Smith & Davis LLP
99 Wood Avenue South
Iselin, NJ 08803

Attorney for Amboy Bank f/k/a Amboy National Bank
Michael Kahme, Esquire
Hill Wallack LLP
202 Carnegie Center
Princeton, NJ 08543-5226

Attorney for the Liquidating Trust Oversight Committee
Walter Greenhalgh, Esquire
Duane Morris, LLP
774 Broad Street, Suite 1200
Newark, NJ 07102-3889

Attorney for Dismissed Intervenor-Defendant D and D Trust
Eugene Killian, Jr., Esquire
The Killian Firm, P.C.
555 Route 1 South, Suite 430
Iselin, NJ 08830

On August 17, 2012, the Cayre Entities[1] filed a "Motion for Partial Summary Judgment in Furtherance of Settlement with Trustee". In conjunction with that motion, the Liquidating Trustee filed a "Motion for an Order Approving Settlement Agreement By and Among Kenneth Cayre, KLCC Investments, LLC, KLC Foundation and Charles A. Stanziale, Jr. as Liquidating Trustee". On October 15, 2012, the court took oral argument on the two motions, and reserved decision.

The court begins with the summary judgment motion because the parties have made entry of a final order in favor of the Cayre Entities on the summary judgment motion a condition precedent to the effectiveness of the Settlement Agreement. Preliminarily, the court notes that the motion for summary judgment was procedurally improper. Rule 56(a) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 7056, provides that on a motion for summary judgment the moving party must identify "each claim or defense – or the part of each claim or defense – on which summary judgment is sought." The Cayre Entities failed to identify any specific claim or defense in their motion. That failure is telling. At oral argument, the court asked counsel for the Cayre Entities to identify the count or counts on which the motion was based and counsel responded that they were moving for partial summary judgment on Count I of D & D's Crossclaim and Counterclaim[2]. Reliance on D&D's Crossclaim and Counterclaim

---

[1] Kenneth Cayre, KLCC Investments, LLC and KLC Foundation

[2] Count I sought declaratory judgment against KLCC, Kenneth Cayre, and the Trustee "[d]eclaring and adjudging that D & D is entitled to sole and immediate ownership and possession of the Account, free and clear of any competing claims by KLCC and/or the Trustee, and unencumbered by any provision of the Bankruptcy Code." Alternatively, "that D & D has a valid first-position security interest in the Account, to the exclusion of KLCC; and further declaring and adjudging that the Account is not part of the Dwek bankruptcy estate, and that neither the Trustee nor the estate has any valid interest in the Account." [Docket No. 62]

3

creates obvious problems: since the Amboy Settlement in February 2012, all parties to this adversary proceeding have been conducting the litigation as if D&D were no longer a party.[3]

The Cayre Entities answer to this conundrum is to argue that only the Counterclaim against the Trustee was dismissed, but the Crossclaim survived the Amboy Settlement. That argument is not supported by the language of the Amboy Settlement Agreement. Section 4.4 of the Settlement Agreement provides: "upon the Effective Date of this Settlement Agreement (as defined below), the Amboy/Scharpf Defendants will cause D&D Trust to withdraw and/or dismiss its involvement from the Cayre Adversary."[4] Section 9.7 of the Settlement provides: "As soon as practicable after the Final Approval Order (defined below) is entered, the Amboy/Scharpf Defendants will file a notice of withdrawal or notice of dismissal as it relates to the Amboy/Scharpf Defendants in the Cayre Adversary, thus terminating D&D Trust's involvement in the Cayre Adversary." In light of the specific language "D&D Trust to withdraw and/or dismiss its involvement from the Cayre Adversary" and "terminating D&D's involvement in the Cayre Adversary", the Cayre Entities' argument that D&D would remain in the case to prosecute its Crossclaim is, at best, revisionist history. The court agrees with Amboy's assessment that: "the Cayre Defendants have no pending claims against D&D in the Cayre Adversary Proceeding nor have they ever asserted affirmative claims against D&D in that proceeding."[5] The Cayre Entities cannot move for summary judgment on a dismissed claim, and the motion must be denied on that basis alone.

---

[3] D&D was not included in the mediation conducted by Judge Bissell; has not signed any of the Pre-Trial Scheduling Orders; has not been included in any discovery; and has not attended any hearings after February 2010.
[4] *Settlement Agreement* Adv. No. 09-1229; Docket No. 28
[5] Amboy's Objection to the Liquidating Trustee's Motion at 5

The Cayre Entities respond that it is indisputable that the D&D Crossclaim was never dismissed because Federal Rule of Civil Procedure 41 requires their consent and it was not given. Rule 41(a)(2) provides that even after a party has answered, the court can permit an action to be dismissed by court order. The Cayre Entities argue that once the issue of who owned the securities was joined in this adversary proceeding that it was improbable that "this Court then used the vehicle of the D&D Settlement Agreement, without the required consent of the Cayre Entities, to split the determination relating to the interests in the Securities into two forums. That result is unsupported by the record and, in any event, would make no sense as it could lead to inconsistent rulings on the same issue by two courts." It is a legitimate point; as these current motions demonstrate, the Liquidating Trustee did not anticipate the impact the Amboy Settlement would have on his ability to resolve the issues in this adversary proceeding. Admittedly, this court in approving a settlement in another adversary proceeding was not consciously making a determination under Rule 41(a)(2) regarding dismissal of D&D's Crossclaim. This court likewise shares the Cayre Entities' concern about the logistics of having the issue of ownership of the securities determined in another forum. Again, it does not appear that the Liquidating Trustee gave that thorny issue proper consideration before presenting the Amboy Settlement to the court. But the difficult reality is that the clear and unequivocal language of the Amboy Settlement Agreement terminates D&D's involvement in this adversary proceeding.

The Liquidating Trustee filed a response that pointedly side-steps this crucial issue. His response fails to even address the dismissal language in the Amboy Settlement Agreement. The Liquidating Trustee blithely claims that "[t]his Court is an adequate and appropriate forum for

5

adjudicating D&D's rights and there is no question that it will provide D&D with the procedural safeguards to which it is entitled."[6] The court must assume that the Liquidating Trustee is aware that D&D has not been participating in this litigation since the Amboy Settlement. That being the case, it is unclear how the Liquidating Trustee can claim that it would be equitable to have D&D's rights adjudicated in the context of these motions when D&D - by virtue of its settlement with him - are no longer a party to this adversary proceeding. The court agrees with D&D and Amboy that the summary judgment motion and the proposed settlement seek to circumvent the express terms of the Trustee's prior agreement with D&D in the Amboy Settlement.[7]

Ultimately, even if the court had been able to find that D&D's Crossclaim survived the Amboy Settlement, it would still be compelled to deny summary judgment. The Cayre Entities present two arguments in favor of summary judgment. The first is that even if D&D has a security interest it is limited to a worthless account at Brown & Company. The second is that D&D can no longer assert a right to the securities based on principals of res judicata and judicial estoppel because D&D waived its interest in the securities as part of the Amboy Settlement.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[8] "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."[9] A fact is "material" if

---

[6] Liquidating Trustee's Combined Response at 10

[7] Another anomaly of these motions is the apparent concession by the Liquidating Trustee that the estate has no interest in the securities. Has the Trustee abandoned the first count of his complaint?

[8] Fed. R. Civ. P. 56(a)

[9] Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986))

proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

Federal Rule of Civil Procedure 56 governing summary judgment motions was substantially revised in December 2010. As one court noted: "The familiar formulation of 'genuine issue of material fact' that was previously set forth in Federal Rule of Civil Procedure 56(c) was recently modified to read "genuine dispute as to any material fact." See, Fed. R. Civ. P. 56(a). As the notes to this amendment point out, the reformulation of the standard is stylistic in nature and without substantive change. The notes recognize that the standard now set forth in Rule 56(a) does not affect the continuing development of the prior decisional law, which applied the standard as previously set forth in Rule 56(c)."[11]

Accordingly, it remains a correct statement of the law that, in undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.[12] "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."[13] While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial."[14]

---

[10] Anderson, 477 U.S. at 248
[11] Various Plaintiffs v. Various Defendants, 856 F. Supp. 2d 703 (E.D. Pa. 2012)
[12] Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265 (3d Cir. 2010).
[13] Id. at 268
[14] Anderson, 477 U.S. at 250

The court will first address the Cayre Entities' argument that the Pledge and Security Agreement ("PSA") relied on by D&D is invalid on its face because it did not sufficiently describe the collateral. There are two aspects to this argument. The first is that the security agreement did not contain an adequate collateral description, and the second is that the only document that purports to identify the collateral is the financing statement which refers to an irrelevant account at Brown & Company.[15] Typically, the sufficiency of a collateral description would be a legal issue, but here there are underlying factual disputes.

The Uniform Commercial Code provides that a collateral description "is sufficient, whether or not it is specific, if it reasonably identifies what is described."[16] The PSA describes the collateral as "shares of stock or other securities or certificates as listed on Schedule A". The Cayre Entities maintain that Schedule A does not exist. D&D argues that "Schedule A was provided by Solomon Dwek on a Citigroup form, and enclosed with a letter dated February 15, 2006 from George E. Scharpf of Amboy Bank to Dwek's broker confirming the transfer."[17] It is unclear from this record whether the one page printout attached to the February 15, 2006 letter is the "Schedule A" referred to in the October 2005 PSA. If the printout can be regarded as "Schedule A" then it would be sufficient under § 9-108 because it contains the account number, the names of the specific stocks and the quantity held. Whether the printout is "Schedule A" to the PSA is a factual dispute that would preclude the entry of summary judgment.

The second aspect is whether the collateral description in D&D's financing statement would satisfy the UCC requirements. The Financing Statement describes the collateral as "All

---

[15] The Cayre Entities blur these arguments together in their brief but they implicate distinctly different legal concepts. The former concerns whether a valid security interest arose and the latter concerns whether the security interest was properly perfected.

[16] UCC § 9-108; N.J.S.A. § 12A:9-108(a); N.Y. CLS UCC § 9-108(a)

[17] D&D brief at 21; Ex. 5 to Scharpf Declaration [Doc. 213]

right title and interest in and to an investment account held by Brown and Company in the name of Amboy National Bank with a market value of $10,000,000.00." It is undisputed that the securities were never transferred to the account at Brown and Company. Deciding this issue, which concerns whether any security interest held by D&D is perfected, is beyond the scope of the summary judgment motion. As stated by the Cayre Entities: "To be clear, the only issue presented to the Court by this Motion is whether D&D had and has retained a security interest in the Securities."[18] Whether D&D had and has retained a security interest is determined by § 9-203 of the UCC, not by the perfection and priority provisions of § 9-301, *et seq.* Therefore, any arguments over the sufficiency of the collateral description in the Financing Statement, including whether D&D's unclean hands defense raises factual issues, exceeds the self-defined scope of the motion.[19]

The court now turns to the Cayre Entities' second argument: that summary judgment is appropriate based on principals of res judicata and judicial estoppel. The Cayre Entities state that it is self-evident that D&D "agreed to give up any interest it purportedly had in the Securities as part of the D&D Settlement Agreement,"[20] and the "Trustee's grant to the Amboy/Scharpf Defendants of a stake on the proceeds of this Adversary Proceeding was obviously the consideration for D&D's forfeiture of its claimed entitlement to the Securities." Based on that, they argue that judicial estoppel prevents D&D from asserting an interest in the securities because "D&D previously bargained away its interest in the Securities as part of the D&D Settlement Agreement." That is not how the Liquidating Trustee views the issue.

---

[18] Cayre Entities's Memorandum of Law at 7

[19] Additionally, to properly consider the perfection and priority issues, this court would have to delve into the validity of the Cayre Entities' security interest and they clearly do not want the court to do that.

[20] Cayre Entities' Memorandum of Law at 5

9

Curiously, despite needing this summary judgment motion granted to proceed with the settlement, the Liquidating Trustee states in his brief[21] that he "agrees with D&D that the Amboy Settlement preserved D&D's ability to litigate against the Cayre Defendants regarding its rights to the Securities."[22]  If that statement alone did not foreclose the Cayre Entities estoppel argument, then the language of this court's order approving the Amboy Settlement surely does. The order approving the Amboy Settlement entered on February 22, 2010 provides: "that the claims between D&D Trust and the Trustee in the Cayre Litigation (as defined in the Settlement Agreement) are settled pursuant to the terms of the Settlement Agreement, and this Order Approving Settlement shall in no way be deemed of preclusive effect with respect to D&D Trust's litigation against third parties, including but not limited to Kenneth Cayre, KLCC Investments, LLC and/or the KLC Foundation set forth in the D&D New York Litigation".[23] The language in the Order, which is consistent with language in the Settlement Agreement, makes clear that D&D was not abandoning its interest in the Securities as the consideration for the settlement.

Based on the foregoing analysis, the court will deny the motion for summary judgment. Given that ruling, the court need not evaluate the proposed settlement because it is now a nullity. Therefore, the motion for approval of the settlement agreement will also be denied.

At the hearing, the objecting parties raised the issue of the mounting legal fees in this litigation.  The court is keenly aware of the fees that have already been expended in this matter,[24]

---

[21] The Liquidating Trustee did not file a certification.
[22] Liquidating Trustee's Combined Response at 8
[23] Adv. No. 09-1229; Docket No. 31
[24] As acknowledged by the Liquidating Trustee: "The extremely high cost of continuing the litigation has the potential to exhaust the monies remaining in the Liquidating Trust, and thus delaying and possibly preventing further distributions to creditors …." Liquidating Trustee's Combined Response at 5.

but that does not mean that the court can grant a deficient summary judgment motion just to pave the way to settlement.[25] The court has serious concerns about the impact that denial of these motions will have on this litigation and will schedule a status conference to discuss how best to proceed.

                                                                               */s/ Kathryn C. Ferguson*
                                                                               KATHRYN C. FERGUSON
                                                                               US Bankruptcy Judge

Dated: December 3, 2012

---

[25] As the court is sure the Liquidating Trustee is aware, all of the legal fees expended in this litigation are subject to disgorgement if the court ultimately determines that the services rendered did not confer a benefit on the estate.